**Michael FIRKAL, Plaintiff,**

**v.**

**A. R. GLEN CORP., Defendant.**

**Civ. A. No. 444–62.**

United States District Court
D. New Jersey.

Nov. 15, 1963.

Sylvan G. Rothenberg, Paterson, N. J., for plaintiff; by Martin H. Philip, Slatington, Pa. (Pennsylvania Bar), of counsel for plaintiff.

Marley, Winkelreid & Hillis, Newark, N. J., for defendant; by John Bender, Newark, N. J.

WORTENDYKE, District Judge.

This diversity action arises out of a motor vehicle collision, which occurred on New Jersey State Highway Route 22 in North Plainfield in this District, on November 29, 1961. The plaintiff claimed that, as he was bringing his passenger automobile to a stop in obedience to a red traffic light at a road intersection, and had slowed down for that purpose, his automobile was struck in the rear by a truck being operated on the business of the defendant. Charging causal negligence against the defendant, the plaintiff sought damages for personal injuries suffered by himself, and by way of reimbursement of the expense of repairs to his automobile resulting from the damage inflicted thereon by the collision.

The parties waived trial by jury; the defendant waived its defenses upon the issue of liability; and the case was submitted to the Court upon the testimony of the plaintiff and that of one expert medical witness in behalf of each of the parties. The property damage claim was disposed of by compromise.

The testimony discloses that at or about 3:40 p. m. on November 29, 1961, in clear, dry weather, the plaintiff was operating his 1960 Buick LeSabre two-door sedan automobile in a general westerly direction on New Jersey State Highway Route Number 22 in North Plainfield in this District. He was accompanied by his ex-wife, who was seated to his right in the vehicle. As he approached a highway intersection, he observed that the controlling traffic light was red against him, in obedience to which other vehicles had stopped, and he proceeded to slow down for a similar purpose. As he was doing so, his automobile was struck in the rear by the defendant's truck, and forced against a four-foot high concrete highway divider, on its left, and then into the rear of the vehicle immediately ahead of him. The blow or blows caused a whip-lash action of plaintiff's neck. His hat was knocked off, and his chest came in contact with the rim of the steering wheel of his car; which came to rest with his body partly on the seat and partly on the floor of the vehicle. In one or both of the two impacts which plaintiff claimed resulted from the blow of the defendant's truck, plaintiff's companion was thrown against the windshield and temporarily dazed (although no claim is herein made in her behalf.)

Both of the occupants of plaintiff's automobile alighted from the vehicle within a minute or two, and then reentered it, and, at the direction of a police officer the plaintiff drove the car across the street out of the flow of traffic. The plaintiff says that he felt pain in his left arm, and placed a nitroglycerin tablet beneath his tongue which caused the pain in the arm to subside. The damaged vehicle was towed to a nearby garage and the

plaintiff was taken to North Plainfield Police Headquarters.

After waiting for six or seven hours, plaintiff borrowed a car from the garage to which his vehicle was taken for repairs, and drove to Coaldale, Pennsylvania, whither he and his companion had been bound at the time of the collision. They stayed there overnight; and plaintiff says that his sleep was disturbed by pain throughout his body, principally in his neck.

The following day he consulted a physician in Lansford, Pennsylvania, after which he and his companion drove to Lake George, New York, where she operated a motel. At about 3:00 a. m. on December 1, while at the motel, plaintiff awakened from his sleep in a "cold sweat", with pain in his left arm and chest; but after these pains persisted for about 30 to 40 minutes, they disappeared and he resumed sleeping. Later that morning he consulted a physician in Lake George Village.

With reference to the orthopedic injuries which he claims to have sustained in the occurrence of which he complains, plaintiff testified that, for two or three weeks after the occurrence, he experienced difficulty in swallowing and suffered discomfort in his shoulder, neck, back and chest. For a period of six to eight weeks after the collision, rotation of his head to the right or left caused him to feel pain in his neck, and he claimed that at the time of his testimony rotation of his head to the right was still painful.

His employment was that of a restaurant manager in New York City. He commuted between his place of employment and Coaldale, Pennsylvania, 125 miles away, where he stayed most of the time. He resumed his occupation early in December 1961 and has since continued to work thereat approximately two days a week. He had previously worked but one day a week by reason of his concern about his heart.

There was no orthopedic expert testimony presented to me. The single issue to which the evidence was directed was that having to do with the claim of the plaintiff that a condition of arteriosclerotic heart disease, from which admittedly he had been suffering for a period of approximately two years before the occurrence of which he complains, had been aggravated by the emotional upset attendant upon the occurrence giving rise to the action.

Plaintiff testified that he had been having chest pains for two years before the accident; some of them, four or five weeks before the occurrence, were severe in character. More recently, on November 15 or 16, at Lake George, New York, he had had a similar onset after he had eaten heavily. Following the Lake George attack, he consulted a Dr. Dier of Lake George Village, and had an electrocardiogram on November 20 or 21, 1961, made by a Dr. Rothschild of 115 West 86th Street, New York City. One or two months after the accident, he consulted a Dr. Donahue of Bethlehem, Pa., who also took an electrocardiogram.

On February 22, 1962, he consulted Dr. William A. Leff, a specialist in internal medicine and cardiology, upon whose testimony he relies for support of his contention respecting the alleged cardiac consequences of the motor vehicle collision of which he complains. Dr. Leff testified that the plaintiff gave him the following history:

Patient stated that he suffered a chest injury in a motor vehicle collision on November 29, 1961, followed immediately by acute chest pain, emotional upset and fear of a recurrence of a previous heart attack. He drove to Lake George, New York the day following the collision and awakened early the following morning with severe chest pain and anxiety. The pain was similar to pains which he had suffered in October, 1961. The chest pain subsided in about three-quarters of an hour. One of his siblings had died of heart disease.

The doctor's examination disclosed that the patient's blood pressure was 144 over 90, his eyes were physiological and the fundi showed grade one sclerosis.

His heart sounds were good and regular. There were no murmers. His femoral artery pulsations were equal and normal. Electrocardiogram showed a regular sinus rhythm with a counterclockwise rotation of the heart and inversion of the T waves in leads V 4, 5 and 6. Fluoroscopy showed a slight rounding of the left ventricle (which, on subsequent fluoroscopic examinations was absent). Objective examination disclosed a condition of myocardiac ischemia (lack or reduction of blood supply to the heart muscle). Dr. Leff's diagnosis on February 22, 1962 was arteriosclerotic heart disease, coronary thrombosis and angina pectoris.

The case was followed up with monthly electrocardiograms until June, 1963, after which the doctor saw the patient bi-monthly. The electrocardiogram of April 3, 1962 and all subsequent ekgs appeared normal. This, in the doctor's opinion, indicated an improvement, but he concluded, based only upon the patient's subjective complaints, that the periodic recurrence of angina pectoris persisted. It was also his opinion that the plaintiff had had a coronary thrombosis some time prior to the collision of November 29, 1961 but that the occurrence aggravated the underlying condition of arteriosclerotic heart disease, with the possibility that the emotional upset attendant upon the motor vehicle collision may have induced a fresh small thrombosis of the coronary vessel.

The doctor advised plaintiff to stop his heavy smoking, placed him on a low-fat diet and ordered him to lose weight, to avoid emotional tensions and strenuous exercise.

Assuming the onset of a thrombosis following the traumatic episode, the doctor was inclined to a guarded prognosis. This attitude was based upon his interpretations of the successive electrocardiograms, the history given by the patient, the probable emotional impact of the collision upon the patient, the family history, and the conceded arteriosclerotic tendency. Dr. Leff concluded that the plaintiff had suffered a coronary thrombosis in October of 1961, and that the superimposition upon the underlying heart disease of the emotional consequences of the motor vehicle collision in November of that year probably aggravated the condition which had existed prior to the traumatic occurrence. The doctor did not, however, attach great seriousness to the aggravation, and he expressed the opinion that the patient had done well, considering all that had transpired. Assuming that the plaintiff had not been involved in the automobile collision, it was the doctor's opinion that he would have suffered recurring episodes of angina pectoris and other subjective manifestations of a progressive cardiac condition. The aggravation which he believed had resulted from the accident was permanent in Dr. Leff's opinion; but he placed the patient in the same classification range of degree of overall disability following as before the occurrence; that is to say, he concluded that by reason of the underlying cardiac condition of the plaintiff, he should be classified as disabled to a degree lying between 50% and 70% of total both before and after the claimed aggravation. The frequency of the onset of anginal pains, as disclosed by the patient's subjective complaints, appeared to be no greater subsequently than prior to the collision. Plaintiff was last seen by Dr. Leff, prior to the trial, on September 10, 1963, when, except for his complaints of angina on physical effort, he appeared to be otherwise "OK".

Expert testimony in behalf of the defendant was given by Jerome G. Kaufman, M. D., a recognized expert cardiologist, whose qualifications were conceded by both parties and well known to the Court. He had examined the plaintiff on May 2, 1963. At that time plaintiff's version of the motor vehicle accident was that he had stopped his automobile on the highway, and that it was struck in the rear by a truck. He stated that he was injured, but nevertheless drove to his sister's home in Coaldale, Pennsylvania, and that on the following day X-rays of his head and chest were taken by

a physician in a neighboring Pennsylvania town. Later the same day, plaintiff went to Lake George, New York, to rest at a motel run by his ex-wife. At 3:00 a. m. of the day following his arrival at Lake George, he was awakened from sleep by a sharp pain in his chest, pain in his left arm and profuse perspiration. This pain lasted from twenty to thirty minutes, and he consulted a physician in the vicinity later the same day. He admitted that he had consulted another physician two or three times for pains in his chest and left arm before the occurrence of November 29. Plaintiff stated to Dr. Kaufman that the physician whom he consulted at Lake George told him that he must have had a coronary, and advised him to return to the office of the New York City doctor, whom he had previously consulted, for the making of an electrocardiogram. Plaintiff stated further that he had consulted many physicians and finally became a patient of Dr. Leff, whom he visited once a month. Plaintiff did not disclose to Dr. Kaufman that he had had a heart attack on November 15 or 16, 1961. At the time Dr. Kaufman examined, plaintiff's complaints were of occasional chest pains radiating down the left arm, relieved in ten to twenty minutes by orally administered nitroglycerin. He also complained of pain in the neck on motion, and of shortness of breath on exertion. On examination by Dr. Kaufman, plaintiff, then 48 years of age, appeared to be well, weighed 160 pounds, was five feet five inches tall, and had a blood pressure of 144 over 100 in both arms, which was within normal limits. He did manifest early retinal and radial vessel sclerosis. Examination of heart and lungs was completely negative. No chest pathology was disclosed by fluoroscope or chest X-rays. His electrocardiogram was normal. Dr. Kaufman's diagnosis, based upon the symptomatology given was coronary artery sclerosis with angina pectoris. There was no evidence of any recent or old myocardial infarction; nor was any history given of an infarction or hospitalization therefor. It was Dr. Kaufman's opinion that there was nothing in the history given to him or disclosed by his physical examination which would indicate to him the plaintiff had had a major insult to the heart either before or after the accident. He testified that the angina from which the plaintiff had been suffering prior to the accident was the manifestation of a systemic medical condition involving the coronary arteries. He could find no evidence either in the history or from his examination upon which he could conclude that the automobile accident in which the plaintiff was involved on November 29, 1961 had anything to do with his cardiac condition at the time of examination. The doctor did, however, concede that although the coronary sclerosis could not have resulted from the accident, a myocardial infarction could result therefrom. Emotional stress could not cause the angina, but could increase it. Responsive to inquiry as to the effect of the emotional experience upon the post traumatic angina and the patient's longevity, Dr. Kaufman stated that a man can live for thirty years with angina, or can die in five minutes from angina.

I find from the evidence presented to me that the plaintiff, prior to the occurrence of November 29, 1961, was suffering from a condition of arteriosclerotic heart disease, manifested by periodic onsets of angina pectoris. I further find that, in addition to the direct and indirect trauma, the plaintiff suffered an emotional upset in the motor vehicle collision which was caused by the negligence of the operator of the vehicle which collided with that of the plaintiff. I find the negligence on the part of the operator to be imputable to the defendant. There is no evidence before me from which I can infer that the plaintiff was guilty of any negligence which contributed in the causation of the occurrence complained of. I am further convinced by the preponderance of the evidence that the emotional upset suffered by the plaintiff in and in consequence of the collision probably aggravated the preexisting heart disease from which the plaintiff

had been suffering. Whether a coronary thrombosis took place after the motor vehicle accident and to what extent, if any, such a development may have been causally related to the defendant's negligence are questions which are answerable, if at all, in the realm of possibility as distinguished from probability. Therefore, in view of the burden of proof which is cast upon the plaintiff in this case with respect to his claims for injuries, I cannot say that the accident probably induced a further coronary thrombosis. While I am persuaded that there was probably an aggravation of the plaintiff's underlying heart disease in consequence of his emotional reaction to the motor vehicle collision, I am equally persuaded that his over-all disability has not been increased as a proximate result of the accident to any specific degree over that which existed by reason of his condition prior to the occurrence, and would probably have developed without the intervention thereof. However feeble the plaintiff may have been by reason of the preexisting condition of disease, the defendant would be chargeable with damages proportionate to the degree, if any, to which plaintiff's prior disability was temporarily or permanently aggravated as the proximate result of defendant's negligence.

The question of plaintiff's right to damages for the consequences of the collision to his automobile is not before me. I find that Dr. Leff's professional services to the plaintiff were appropriate to the condition from which he was suffering following the accident. The doctor's bill of $300 therefor is, in my opinion, reasonable. A further charge of $35.00 for electrocardiographic examination and an item of $171.85 for prescribed medication are reasonable charges and should be allowed to the plaintiff as part of his damages. For such physical and emotional traumata and the degree of disability consequential thereto which the plaintiff sustained as a proximate result of the negligence of the defendant alleged in the complaint, and including the special damages for medical and medication expense, I award to the plaintiff the sum of $3,500.00.

This opinion shall constitute my findings of fact and conclusions of law and an order may be presented for judgment in favor of the plaintiff and against the defendant in the amount of the damages aforesaid, but without costs, in this action.